FRANCIS D. KIDDER *versus* INHABITANTS OF KNOX.

By the statutes in force in 1854, towns were authorized to sell spirituous liquors for specific purposes, which, of necessity, implied an authority to purchase them, for otherwise the law would be nugatory.

An agent to sell is not, necessarily, an agent to purchase; and if this specific power was not delegated to the agent appointed to sell the liquors, or to some other particular person, the selectmen were the general agents to act for the town in giving effect to the law.

The sale of liquors to the selectmen, as the agents of the town, was a sale to the town; and the vendor may recover their value, in an action against the town.

For liquors so purchased, the selectmen, signing as such, gave their negotiable promissory note to the vendor : in an action by him against the town, it was *held*, that the giving of the note did not essentially change the nature of the original contract, but made it more susceptible of proof; and it will not be presumed that the vendor thereby intended to extinguish the original liability of the town.

Kidder *v.* Knox.

By the earlier decisions of this State, and before it was provided by statute that, when a lawful act is done by an authorized agent, it may be regarded as the act of the principal, such a note might have been held to be the note of the signer, and not of the principal.

ASSUMPSIT. At *Nisi Prius*, GOODENOW, J., presiding, being of the opinion that the action was not maintainable, the plaintiff consented to become nonsuit, to be taken off, if, upon a report of the case, to be made by the presiding Judge, the full Court should be of the opinion that the action was maintainable.

The case was argued by,

*Dickerson & White*, for the plaintiff, and by

*N. Abbott*, for the defendants.

The case is stated in the opinion of the Court, which was drawn up by

CUTTING, J. — The case finds that one Thomas Paine was duly appointed, under the provisions of law then existing, by the selectmen of Knox, as an agent for the town, to sell spirituous and intoxicating liquors for medicinal and mechanical uses, during the year 1854, and that he was duly qualified.

*James Weed*, a witness called by the plaintiff, testified, without objection, that "he purchased the liquors named in said account annexed, in Boston, in his said capacity as one of the selectmen of Knox, under the direction and by the decree of a majority of said board of selectmen, to be sold by said agent, in virtue of his capacity as agent aforesaid; that the said notes were given for a balance of said account, and signed by witness and said Higgins, in virtue of their said capacity, and indorsed by them to the plaintiff."

This suit is brought on the original account and also on the two notes given for a balance of that account, of the following tenor: — "Boston, Oct. 25, 1854. Six months after date, we promise to pay to our own order, three hundred dollars, for value received.

(Signed)      " James Weed,    *Selectmen of*
                    " John Higgins,   *town of Knox.*"

Kidder v. Knox.

The second note was similar excepting in date and amount.

The statute of 1851, § 2, authorized the appointment of the agent of the town to sell, as disclosed by the witness, and the statute of 1853, § 8, directs that the casks and vessels containing the liquors, shall be marked with the name of the town and its agent, and that the agent shall have no interest in such liquors or in the profits of the sales thereof.

The cities, towns and plantations being thus authorized, under these two statutes, to sell spirituous and intoxicating liquors for specific purposes, had necessarily an implied authority to purchase, otherwise the law would be nugatory. An agent to sell is not necessarily an agent to purchase, and, in the absence of any specific power, delegated by the town to any particular person, the selectmen are constituted the general agents to act for their towns in furtherance and aid of statute or municipal regulations; and such trust cannot usually be more appropriately conferred.

The sale, then, of the liquors to the selectmen, as the agents of the defendants, was a legal sale to the principals, who are legally bound to the plaintiff to pay to him the stipulated price, if any, or a *quantum meruit*. Have they done it? The defendants' counsel contends that they have, and reasons thus: the original account was paid by the negotiable notes,—the notes, although purporting to have been given by the selectmen, do not bind the town, but the signers, and therefore the town has avoided an original legal liability. Assuming these propositions to be true, how are the defendants finally to be benefitted? They may defeat the plaintiff in this action, who may resort to the signers of the notes, and they, subsequently, to the town in an action for money paid, laid out and expended for its benefit. Circuity of action is always to be avoided, when possible, and the maintenance of the present action, for such cause, may not violate any known rule of law, but we prefer to place the decision on other grounds.

Are the notes those of the town or only those of the signers? By the earlier decisions in this State and Massachusetts, they would be those of the latter; but how far subse-

quent legislation has changed the law on that subject, may be worthy of consideration. See stat. of 1823, c. 220, and re-enactments in 1840 and 1857. Also stat. of 1857, c. 1, § 4, clause 21, a transcript of the stat. of 1840, relating to the same subject, as follows, — "When an act that may be lawfully done by an agent, is done by one authorized to do it, his principal may be regarded as having done it." It will not be denied that the selectmen were the agents of the town, and it has heretofore been shown that they were, as such, legally authorized to purchase the liquors, and the testimony is that the liquors were so purchased. The giving of the notes did not essentially change the nature of the contract, but made it more susceptible of proof. They could have drawn an order on their treasurer, instead of making the notes, and the difference would be merely in form. The only agency disclosed in town orders is similar to that contained in the notes, the names of the selectmen in their official capacity, and, under the old decisions, it may be questionable whether selectmen do not render themselves liable, instead of their towns, on all such orders. A distinction is attempted to be drawn between the tenor of orders and the notes in suit, because the latter contains the words "we promise;" but the question may be asked — who are we? Look at the signatures; there it is found that "*we*" are the selectmen of the town of Knox, or, in other words, agents of the town, in which capacity we promise. And the evidence produced at the trial discloses an authority as agents to act. Now apply the citation from the statute and judge whether the legal promisors in the notes are not the inhabitants of the town of Knox. But, for the maintenance of the action, it is unnecessary to rely upon this point.

If the notes were negotiable in the hands of the plaintiff, of which, as the case is presented, there may be doubt, still, is the plaintiff debarred from maintaining this suit on his original cause of action? We think, from the evidence and the authorities, that he is not. The plaintiff's original claim was against all the inhabitants of Knox, and, from the evi-

dence, is there any "pretence for supposing that he ever intended to extinguish that liability,"—that he would release all the defendants excepting two of them ? The inference from the whole evidence, including the official capacity of the signers of the notes, is otherwise; if any such inference could be drawn, it was for the jury and not for the Court. But, if for the latter, they should consider that, "whenever it appears that the creditor had other and better security than such note for the payment of his debt, it will not be presumed that he intended to abandon such security and rely upon his note." See *Wilkins* v. *Reed,* 6 Maine, 220, 2d ed., and note by editor, citing *Butts* v. *Dean,* 2 Met., 76 ; *Curtis* v. *Hubberd,* 9 Met., 328, and *Perrin* v. *Keene,* 19 Maine, 355.

*Nonsuit taken off, and*
*Case to stand for trial.*

TENNEY, C. J., APPLETON, GOODENOW, DAVIS and KENT, JJ., concurred.